IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Brenda J. Gentry, | Case No. 3:08 CV 2529 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| The Renal Network, et al., | |
| Defendants. | |

This matter is before the Court on Defendants National Nephrology Associates of Toledo ("NNA") and The Renal Network's ("TRN") Motion to Dismiss (Doc. No. 15) under Federal Civil Rule 12(b)(6), Plaintiff Brenda Gentry's Opposition (Doc. No. 20), and Defendants' Reply (Doc. No. 21). Defendants move to dismiss the Amended Complaint (Doc. No. 10) in its entirety based upon the defense of the statute of limitations.

## BACKGROUND

In March 1990, Plaintiff was diagnosed with Systemic Lupus Erythematosus ("SLE"). As a result of her SLE, Plaintiff further developed End Stage Renal Disease, requiring weekly kidney dialysis treatment. In April 1995, Plaintiff began receiving weekly kidney dialysis treatment at the Westgate Community Dialysis Center ("Westgate"). Westgate is owned and operated by Defendant NNA. Defendant TRN monitors dialysis centers, including Westgate, in Ohio, Kentucky, Illinois, and Indiana for Medicare and Medicaid Services.

On July 2, 2001, Plaintiff requested a grievance meeting with Westgate regarding recent staff reductions which Plaintiff believed endangered her life. On July 3, Plaintiff was told that Westgate would be returning to its prior staffing levels. On July 4, Plaintiff arrived at Westgate to receive her dialysis treatment. Plaintiff, while talking with another patient, was ordered to return to her dialysis station by Kathy Graham, NNA Area Administrator. Plaintiff and Graham exchanged heated words and Rolando Belmares, a Westgate security guard, eventually escorted Plaintiff from the building.

On July 5, NNA officially terminated Plaintiff's treatment, citing her disruptive behavior on July 4, and the statement of Belmares that Plaintiff threatened the lives of several Westgate employees and their families. On July 6, Plaintiff returned to Westgate, but was informed she would be denied any further access or treatment. Plaintiff was refused dialysis treatment from five other dialysis centers monitored by TRN in Northwest Ohio. Eventually, Plaintiff began receiving dialysis at Dialysis Centers of America ("DCA") in Bowling Green, Ohio. Plaintiff continued her dialysis at DCA for some six years until her kidney transplant on June 12, 2007.

Plaintiff filed a grievance against NNA with the Ohio Civil Rights Commission ("OCRC"). The OCRC conducted an investigation and received affidavits from both Graham and Kathy Tucker, Clinical Manager at Westgate (Doc. No. 14). Plaintiff eventually withdrew her grievance and pursued the instant action. In her Amended Complaint, Plaintiff alleges several violations of federal law, including violations of the Rehabilitation Act, the American with Disabilities Act ("ADA"), and the Emergency Medical Treatment and Active Labor Act ("EMTALA"). Plaintiff also alleges discrimination, libel, and retaliation under Ohio law. Defendants have moved for dismissal on all counts under Federal Civil Rule 12(b)(6).

2

## STANDARD OF REVIEW

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Federal Civil Rule 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*citing Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2 MOORE'S FEDERAL PRACTICE § 12.34[1][b] (Matthew Bender 3d ed. 2003). A court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## RETALIATION

As a preliminary issue, Plaintiff admits her claim for retaliation arises under R.C. § 2921.05(B), a criminal statute that does not allow for a civil remedy. Therefore, Defendants' Motion to Dismiss is granted with regard to Plaintiff's retaliation claim.

## APPLICABLE STATUTES OF LIMITATIONS

Plaintiff alleges NNA's termination of her dialysis treatment was in violation of the Rehabilitation Act and the ADA. Neither the Rehabilitation Act nor ADA provides a statute of limitations. Recently, this Court addressed the question of the applicable statue of limitations for Rehabilitation Act/ADA claims, and held that a claim must be brought within two years. *Frank v. Univ. of Toledo*, No. 3:06 CV 1442, 2007 U.S. Dist. LEXIS 94993, at *10-16 (N.D. Ohio Dec. 28,

2007) (noting that the majority of circuits apply the state statute of limitations for personal injury to Rehabilitation Act/ADA claims, which in Ohio is two years under R.C. § 2305.10).

Plaintiff also alleges that the termination of her treatment was in violation of EMTALA.[1] In any event, the statute of limitations applies across the board. EMTALA specifically contains a two-year statute of limitations. 42 U.S.C. § 1395dd(d)(2)(C) ("No action may be brought under this paragraph more than two years after the date of the violation.").

Plaintiff's federal discrimination claims accrued on July 6, 2001, when she was notified her treatment at Westgate was terminated. *See Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) ("The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.") (citations omitted). Plaintiff filed her initial Complaint some seven years later, in October 2008 (Doc. No. 1). Applying the applicable two-year statute of limitations, Plaintiff's Rehabilitation Act/ADA claims and her EMTALA claim are clearly barred.

Plaintiff further alleges the termination of her dialysis treatment was in violation of R.C.§ 4112.02(G). That statute prohibits discrimination on the basis of "race, color, religion, sex, military status, national origin, disability, age, or ancestry" in any place of public accommodation. R.C. § 4112.99 provides a civil remedy based on a violation of § 4112 *et seq.* The applicable statute of limitations is found at R.C. § 2305.07, which provides "an action . . . upon a liability created by statute . . . shall be brought within six years after the cause thereof accrued." *See Jackson v. Int'l*

---

[1] It is unclear which section of EMTALA allegedly was violated: A violation of "EMTALA 42 USC 1395dd [sic] which addresses issues of denial of service to patients needing emergency services;" or other violation of EMTALA § 1395dd(g) prohibiting discrimination ("[a] participating hospital that has specialized capabilities or facilities . . . *shall not refuse to accept an appropriate transfer* of an individual who requires such specialized capabilities or facilities if the hospital has the capacity to treat the individual") (emphasis added) (Doc. No. 10, pp. 2, 7). This EMTALA section appears inapposite because Defendant NNA did not refuse to "accept an appropriate transfer" when it terminated Plaintiff's dialysis treatment at Westgate.

*Fiber*, 169 Ohio App. 3d 395, 400 (2006) (*citing Cosgrove v. Willamsburg of Cincinnati Mgmt. Co.*, 70 Ohio St. 3d 281, *syllabus* (1994)).

Plaintiff's claim under R.C. § 4112.02(G) also accrued on July 6, 2001, when she was notified her treatment at Westgate was terminated. *See Zion Nursing Home v. Creasy*, 6 Ohio St. 3d 221, 224 (1983) (holding that the statute of limitations under R.C. § 2305.07 accrues "when the violation giving rise to the liability occurs"). Plaintiff filed her initial Complaint seven years later, in October 2008 (Doc. No. 1). Applying the six-year statute of limitations, this claim is also barred.

Plaintiff's final claim is for libel. The statute of limitations for libel claims in Ohio is one year after the libelous words are first spoken or published. *Ziegler v. Findlay Indus.*, 380 F. Supp. 2d 909, 912 (N.D. Ohio 2005) (*citing* R.C. § 2305.11(A)). Plaintiff's claim for libel accrued in March 2002 when the affidavits of Kathy Graham and Kathy Tucker were shared with the OCRC investigators (Doc. No. 14). Plaintiff filed her initial Complaint some seven years later. Therefore, the libel claim is also barred.

### THE CONTINUING VIOLATIONS DOCTRINE

Statutes of limitations serve two purposes: "requiring plaintiffs to bring claims before evidence is likely to have grown stale; and allowing potential defendants repose when they have not been put on notice to defend within a specified period of time." *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) (citations omitted). Plaintiff attempts to sidestep her statute of limitations defaults by alleging a "continuing violation" by Defendants ("It is Plaintiffs [sic] contention that NNA of Toledo and [TRN] continued to discriminate against her . . . , despite her continued attempts to gain admission, . . . until her eventual kidney replacement on June 12, 2007.") (Doc. No. 20, p. 8). The continuing violations doctrine typically applies only to employment

5

discrimination claims and is an equitable exception to a statute of limitations. *Burzynski v. Cohen*, 264 F.3d 611, 617 (6th Cir. 2001).

The continuing violations doctrine encompasses "two narrowly limited exceptions" to the statue of limitations. *Hall v. Scotts Co.*, No. 2:05-cv-732, 2005 U.S. Dist. LEXIS 38396, at *10 (S.D. Ohio Dec. 21, 2005) (*citing E.E.O.C. v. Penton Indus. Publ'g Co.*, 851 F.2d 835, 838 (6th Cir. 1988)). The first category is "where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation." *E.E.O.C.*, 851 F.2d at 838. This category also requires "at least one of the discriminatory acts occur within the statute of limitations." *Hall*, 2005 U.S. Dist. LEXIS 38396, at *11; *see also Deck v. City of Toledo*, 56 F. Supp. 2d 886, 893 (N.D. Ohio 1999) (*citing Haithcock v. Frank*, 958 F.2d 671, 678 (6th Cir. 1992)) ("[W]here there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period."). The second category is "where there has been a long-standing and demonstrable policy of discrimination, such as an established and repeated pattern." *E.E.O.C.*, 851 F.2d at 838.

The Amended Complaint fails to list a continuing violation under the first category. There is simply no alleged violation that occurs within the statue of limitations. *See Burzynski*, 264 F.3d at 618 (affirming a district court's refusal to apply the continuing violations doctrine where plaintiff failed to allege a present discriminatory activity). The only discrete instances of discrimination alleged in the Amended Complaint occurred on July 6, 2001, when she was informed her dialysis treatment had been terminated, and March 20, 2002, when Kathy Graham and Kathy Tucker signed their affidavits. These discrete acts occurred six to seven years before the Plaintiff filed her initial Complaint, and thus fall well outside the applicable statute of limitations.

6

Nor does the Amended Complaint allege a continuing violation under the second category of a "long-standing and demonstrable policy of discrimination." To set forth such a pattern, plaintiff "must clearly demonstrate some 'over-arching policy of discrimination,' and not merely the occurrence of an isolated incident of discrimination." *E.E.O.C.,* 851 F.2d at 838 (*citing Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987)). Here, the only alleged discrimination was Defendant NNA's refusal to continue Plaintiff's dialysis treatment. Plaintiff alleges the five other dialysis centers, not named defendants, continued to refuse her treatment until her eventual kidney transplant. However, Plaintiff does not allege any further discrimination by Defendants NNA and TRN. NNA's decision to discontinue Plaintiff's dialysis treatment was an isolated incident that does not rise to the level of a "long-standing and demonstrable policy of discrimination."

Even if Plaintiff had alleged further refusals by Defendants, the continuing violations doctrine would still be inapplicable because repeated requests do not renew the statute of limitations. *See Hall*, 2005 U.S. Dist. LEXIS 38396, at *12-14 (noting that plaintiff's renewed request did not renew or revive continuing violations claims because the dispositive issue was defendant's original decision). Allowing Plaintiff to pursue a continuing violation merely by alleging Defendants repeatedly refused to treat her would also frustrate the purpose behind the statute of limitations. Under Plaintiff's overly expansive view of the continuing violations doctrine, almost any claim could easily be renewed, thereby rendering all applicable statutes of limitations effectively useless. *See Zdziech v. DaimlerChrysler Corp.*, 114 F. App'x 469, 472 (3d Cir. 2004) (noting "to permit a person to reset the statutory requirements for the timely filing of a complaint merely by writing a new letter to his former employer would clearly vitiate the intent behind the 300-day time limit," and holding "the failure to

7

act upon receipt of a letter requesting reinstatement is not a discrete act of discrimination and does not restart the statue of limitations").

The Amended Complaint appears to rely on the continuing *effects* of Westgate's decision to terminate her dialysis treatment as a basis for her continuing violation claim (Doc. No. 10, p. 6) ("It is our contention these same misrepresentations . . . lead Westgate and the 5 dialysis centers . . . to deny Ms. Gentry access to their facilities. Numerous letters were written . . . but . . . these centers failed to find a vacancy suitable for regular dialysis."). However, as the Sixth Circuit has noted, "limitations periods begin to run in response to discriminatory *acts* themselves, not in response to continuing *effects* of past discriminatory acts." *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991) (emphasis in original); *see also Tolbert v. ODOT,* 172 F.3d 934, 940 (6th Cir. 1999) (refusing to apply the continuing violations doctrine to "continuing ill effects"). Here, the alleged discriminatory acts are the termination of treatment on July 6, 2001 and the affidavits prepared for the OCRC grievance hearing in March 2002. Both acts fall outside the applicable statute of limitations, and any effects, even discriminatory effects, do not constitute a continuing violation.

Plaintiff relies heavily on the U.S. Supreme Court decision in *National R.R. Passenger Corp. v. Morgan* 536 U.S. 101 (2002), arguing for a "broad sweeping application" of the continuing violations doctrine. However, Plaintiff's reliance on *Morgan* is misplaced, as *Morgan* limits the continuing violations doctrine to hostile work environment claims. *See Morgan,* 536 U.S. at 114 (reversing the Ninth Circuit's application of first category of continuing violations doctrine where a single discriminatory act within the statute of limitations is sufficient to establish liability); *see also Skyes v. Potter*, No. 3:05cv289, 2008 U.S. Dist. LEXIS 20709, at *18 (S.D. Ohio Mar. 17, 2008) (arguing that *Morgan* abrogates the continuing violations doctrine outside hostile work environment

8

claims). Plaintiff's characterization of the continuing violations doctrine as "broad" runs counter to all applicable case law.

## **CONCLUSION**

The Amended Complaint fails to state a claim upon which relief can be granted. Plaintiff's numerous claims are barred by each applicable statute of limitations. Further, Plaintiff's attempt to invoke the continuing violations doctrine is unconvincing, as the Amended Complaint does not fall within that doctrine's narrow exception to the applicable statutes of limitations.

For the foregoing reasons, this Court grants Defendants' Motion to Dismiss.

IT IS SO ORDERED.

                                                        s/ *Jack Zouhary*
                                        JACK ZOUHARY
                                        U. S. DISTRICT JUDGE

                                        July 23, 2009